May it please the Court, Kirby Smith for the Appellant Gerald Morgan. I'd like to reserve three minutes for rebuttal. Thank you very much for hearing our case. Thank you to Ms. Morrison also for her professionalism throughout the process. This is a Title VII retaliation case. The essential elements for a prima facie case would start with a protected disclosure or protected activity and this is a summary judgment ruling so it's a de novo standard. The first protected disclosure or first protected activity was in August 2nd of 2012, quite a long time ago, when Mr. Morgan reported to his supervisor Stephen Sherwood that he intended to file an EEO complaint. Now an EEO complaint is essentially the federal employee equivalent to an EEOC charge of discrimination. They're essentially one and the same. Federal employees have a shorter deadline, 45 days, etc. but it is essentially the same process. Mr. Sherwood conceded that the meeting happened but stated that he could not recall details of the meeting. This, the EEOC, the threat or not threat, the stated intention to file an EEOC charge of discrimination is protected under Ninth Circuit case law. It's considered protected opposition. Personally, I did not see any cases that are almost identical and serve an identical purpose. I believe that the August 2nd disclosure stated intention to file an EEO complaint was the first protected opposition in this case. The second protected opposition was when Mr. Morgan went to his direct supervisor Mary Hart and told her that Will Younger, a position to Will Younger, making a comment specifically based on race. That happened on September 20th, 2012. He informed Ms. Hart that same day. Ms. Hart informed Mr. Sherwood via email. And September 24th, 2012, was when Mr. Morgan sent an email to Ms. Hart stating he intended to file an EEO complaint and specifically stated why he was filing that complaint. Let me fast forward a little bit because I think October 16th, as I see it, is a is a crucial date. So let's go there. Specifically, I wanted to ask you about, I think it's this declaration, it's his EEO affidavit that he filed where he kind of summarizes Sherwood's statements on October the 16th. And specifically, I'm looking at this declaration that he files, there are some things in brackets and there's like a question then he answers in bold. That's the formatting on the document. I was just curious first, were these questions that were being asked to him? I was just I was just trying to understand the formatting of this document. Yes, so I believe, I believe that you're referring to the report of investigation, which when a federal employee files an EEO complaint, they go through an initial 30 day counseling process, then they go through a 180 day formal complaint process. The EEO investigator at that point interviews the different people involved with the case and gets declarations from them or statements. And so the bracket is the question from the investigator, then the bold is his answer to those questions. Without having it in front of me, I believe that's accurate. So let me ask you this, in that document, and if you need to grab it if would help, but that it seems to me this is very important because he's recalling the conversation he had with Mr. Sherwood. Right. And in it he talks about things Mr. Sherwood said about, I don't understand why you have to file EEO, it's totally out of my hands, I'm very disappointed with you, you're driving to Tucson every day, now I have to show you that I did something. Right. Now as I reviewed the district court's opinion in this case, the district court discussed the driving to Tucson line. I did not see the district court discussing the other three things about it's out of my hands, I'm very disappointed, I don't understand why you have to EEO this. Absolutely. Did I read the district court's order correctly? That is absolutely correct, your honor. The district court, we presented that as evidence of direct evidence of retaliation because those statements the Ninth Circuit has said that direct evidence should not require inference or presumption. And those statements don't require inference or presumption. I mean, you did X, therefore Y, happening in the same conversation where you're being handed the adverse action in writing is direct evidence of retaliation. The district court, instead of going through the entire statement, and the other important point here is that, again, Sherwood was asked about this, stated that the meeting happened, he recalled giving him the letter and he was asked about the meeting. So, certainly at the summary judgment standard, what Morgan is saying about the meeting should be considered true. The district court only looked at that one statement, you're driving to Tucson every day now, I have to show you I did something, and the district court basically stated that that doesn't constitute direct evidence and, in fact, that may actually be what Morgan was asking for since he wanted to be separated, so here's a separation. That line of reasoning does not stand up when you look at the entire context of the conversation, and I do not know why the entire conversation was not included in the district court's analysis. That was my question. So, we know that the Tucson statement was presented to the district court. I take it all of these statements were presented to the district court. They were, Your Honor, yes. And I take it nowhere in any hearing or any section of the district court discussed the why he did not consider these other statements. Right, there was no hearing on summary judgment in this case, and, frankly, I was perplexed as well when I read the district court's decision on this because these other statements are all part of the same conversation. If you're analyzing this conversation to determine whether or not direct evidence exists, you have to analyze the entire conversation. So, let's say a clerk of yours making a big mistake, let's say. Never happens. Never happens. I know, I know. So, I know this is way far afield, but say that it happened and you sat the clerk down and you said, I don't understand how this happened, but I have to show you I'm doing something, so you're doing this now. You're doing X now. Well, if you just take the end of that, I have to show you I'm doing something, so I'm doing X now. Frankly, you can't even, that statement really doesn't make any sense out of context. The context is absolutely critical here, and it was not analyzed by the district court. Maybe a quicker analogy would be to say that Vice President Gore won in the Florida Supreme Court without saying what happened afterwards. Sure, sure. Okay, my other question for you was that government counsel in this case has said we should affirm anyway, even if everything you said is true, we should still affirm because the standard is a but-for, and we can affirm on alternate grounds. I wanted to get your comment on that, and there's also a recent Supreme Court grant in a case called Babb v. Wilkie that may touch on this, so I don't know if you're familiar with the grant, but I did want to give you an opportunity to respond to their alternate grounds of prevailing. So as far as the but-for causation standard, there is some dispute and some conflict among the different circuits over whether or not but-for standard, but-for causation standard should apply to federal employees, specifically as opposed to private employees. That is in dispute. The EEOC has come out with their own guidance stating that but-for causation should not apply. Merit Systems Protection Board has also followed the same. I know DC has followed the same. So there is a circuit split on that issue. I don't know that but-for causation is a set standard for federal employees nationwide. It's not. And I take it the district court did not address that issue. The district court did not touch on the issue. But our argument would be even if we are under the but-for standard, the but-for standard is the straw that broke the camel's back. And the straw that broke the camel's back here, especially when looking at the timing of everything. So Sherwood has given many conflicting reports on when he made the ultimate decision to issue the directed reassignment to the EEOC. The EEOC has argued that the decision was made on August 30th. They based that off of an email that said, I would like to move both Larry and Jerry, Gerald Morgan, my client, out of the Central Arizona SSC and into two separate units, one at Phoenix, which is Central Arizona, and one assigned to Prescott, which is in the Northern Arizona SSC. But before I move them, I wanted to talk this over with you. Well, obviously there's issues with trying to use that to show but-for causation doesn't exist. First is the timing. A protected disclosure was made on August 2nd. So if this email indicates the moment that he made this decision, which we don't really believe that it does, even if it does, that's 28 days apart. So but-for causation can be met under that standard. The language states a desire, not an intent. The directed reassignment at issue in the email was to the Northern Arizona SSC to the issue here in this case is to the Southern Arizona SSC. And again, it conflicts with many other dates that Sherwood has given at times. Sherwood has said that he finalized the decision October 2nd. At times he said that he made the decision after the Leslie Jones meeting, which was in late September. At times he said that he made the decision weeks before the Jones meeting and it was, quote, in the works. So at this point, one of the facts in dispute is when this decision was made. And our argument is that if there is a question of when the decision was made, then at this point in time, the only logical answer that can be given is that Sherwood was going back and forth deciding whether or not to make this decision. He finds out on October 9th from the EEO counselor who contacts him and says an EEO complaint has been filed against you by Gerald Morgan. You need to provide us with information on this complaint. He finds that out October 9th. He hands Morgan the notice of directed reassignment, which is an involuntary reassignment, on October 16th. So those are just days apart from each other. So looking at the knowledge timing test, which is a common method of proving but-for causation or proving causation of any kind in retaliation cases, we see a clear temporal proximity between the two. And in addition to that, there's also pretext here. The directed reassignment had Morgan commuting for roughly half of his work hours. Now the agency standard, whenever I've been representing federal employees for a long time, the agency standard is that the decision should promote the efficiency of the service. That is the line that has to be put in essentially all of these. And Morgan's own supervisor, Mary Hart, in her deposition stated that she didn't believe it promoted the efficiency of the service. She probably didn't believe that because she had come up with a temporary reassignment that separated Morgan and Sherwood, and it was working fine. Both parties were happy with it. And Sherwood claimed that he didn't know about it, but he did. Page 261 of the record is the e-mail where Mary Hart explains to Sherwood what she had done. So in addition to that, we have an e-mail between Mal Coughlin, Malachy, I think his name was, Malachy Coughlin, which is also at the supervisory level with Sherwood, where the two of them are discussing this, and they call Morgan a troubled child in it. When they issue the directed reassignment, there's an e-mail where they say, put good words in it. These are the types of comments that show pretext. They serve as at least circumstantial evidence, but I believe they show pretext in addition to the burden-shifting analysis. I know I'm skipping around a little here. Do you want to reserve the rest of your time? Yes. All right. Thank you. May it please the Court, Christina Morrison appearing on behalf of the Federal Aviation Administration. This case turns on the timeline of events which show that the agency's efforts to reassign Mr. Morgan were underway well before he engaged in protected activity. This timeline of events is determined by those facts expressly admitted by plaintiff as well as those facts that were deemed admitted by the court at summary judgment. And by one point of clarification, although the grant of to deem facts admitted for plaintiff's failure to comply with the local rules is reviewed for abuse of discretion as stated by this court in Saisley v. Pima County. Those facts, that decision should not be disturbed unless there's a clear abuse of discretion on the record, which there is not here. What was happening in the summer of 2012 in the Central Arizona region of the FAA was disputes and friction between environmental technicians as well as electronics technicians. So even as early as before July 26, 2012, the agency was already bringing in a mediator to try to tamp down those escalations initially between Mr. Younger and one other employee as well, and then after the July 26, 2012 encounter between Mr. Younger and Mr. Morgan, Mr. Morgan was then included in those mediation efforts. Now, Mr. Smith indicated that the plaintiff believes August 2, 2012 was an act of protected activity. It is not for two reasons. First of all, at summary judgment, plaintiff expressly abandoned any claim that the incident in July 2012 was an act of race discrimination. And under the anti-retaliation provision, the statute, you have to engage in activity intended to oppose an employer's discriminatory activities. Since no act of race discrimination could have occurred prior to that in July as abandoned by the plaintiff, he could not have engaged in protected activity on that date. Furthermore, the Supreme Court guidance in Clark County v. Breeden establishes that it is a reasonable person's standard of whether or not somebody has engaged in protected activity. And under Clark County, when we look to see would any reasonable person have believed that what they were are undisputed, that the July 26, 2012 encounter between Mr. Morgan and Mr. Younger was that Mr. Younger approached Mr. Morgan, asked him why he was in the Tempe facility. Mr. Morgan responded, it's none of your business what I do. And Mr. Younger responded, is that how you want to play it, and walked away. That was the extent of that interaction. And based on those undisputed facts, no reasonable person could consider that to have been a Title VII violation. Race didn't even come up. And this is a racial discrimination and retaliation claim. So August 2, 2012 did not constitute protected activity. We do know it's undisputed that as of October 9, 2012, Mr. Morgan formally entered the EEO process, and that does constitute protected activity. After the July 26 encounter, we had the first mediation on August 21st. That seemed to go well. And then, unfortunately, a telephonic outbrief on August 29, 2012, where tempers flared and it ended abruptly. Mr. Sherwood was informed of that, and on August 30, one day later, 2012, he is emailing Mr. Coughlin in HR, indicating that he wants to reassign Mr. Morgan outside of the Central Arizona region, albeit to Prescott. He also asked for intervention in terms of an EEO and accountability board investigation to get to the bottom of other complaints that were raised about a different environmental technician in that outbrief. August 30, 2012 is the date that the efforts were underway to transfer Mr. Morgan outside of the region. And as stated in Clark County, once those efforts are underway, and if they predate the protected activity, there's no evidence of causality whatsoever, and it is a but-for causation standard here. After the August 30, 2012 decision, Mr. Morgan, in fact, does perform work on a temporary reassignment up in the Northern Arizona region. That is undisputed. During that time frame, Mr. Sherwood learns that there is not enough work to sustain Mr. Morgan there, and therefore, they're not going to be able to continue that reassignment. But in discussing with the manager in Northern Arizona, they come upon the idea of the NASTEP inspection down in Tucson. Again, this, too, occurred before any protected activity occurred. Can we jump to the October 16th conversation? And I understand Mr. Sherwood doesn't remember it this way. But at the summary judgment stage, if we assume what Mr. Morgan says is true, there are a number of things that Mr. Sherwood said that Mr. Morgan says shows that this was all retaliation in exchange for a filing EO complaint. That's why it was shipped off and made to drive three hours a day or whatever it is. The district court did not, at least in its order, did not address the entirety of that conversation. And Mr. Morgan is saying that that alone is grounds for reversal. What's your response to that? Our response is that the district court addressed what the focus of the alleged adverse action was, which was the reassignment to Tucson. And the district court held that that was indirect evidence that was not specific and substantial enough to show pretext. So as indirect evidence, the court's ruling was correct in that respect. But what about the parts of the conversation that, at least in the order, the district court did not address? Correct. So even if this court were to consider that to be direct evidence of pretext, it's still not sufficient because plaintiff has to do more and show that the discriminatory reason, more likely than not, was the motivation for the reassignment, that it was pretextual, meaning designed to hide intentional discrimination. Well, I just want to make sure I'm keeping your argument straight. I know one of your alternative grounds for affirming in this case is the but-for standard. Is that what you're talking about now? Well, it applies in both because the plaintiff has to be able to show, more likely than not, that the adverse action, meaning the motivation to reassign Mr. Morgan outside of the region, was motivated by him engaging in protected activity. If the decision had already been made before he engaged in protected activity, it cannot be, more likely than not, the reason for the reassignment. Again, I just want to make sure I'm not, at least in my mind, I'm not blurring the issues here. Correct. So the first issue upon which the district court ruled was insufficient evidence of pretext. Correct. It assumed without ruling on the issue of the prima facie case of retaliation. And now what you're saying is that even if there was pretext shown, there still was insufficient evidence of actual discrimination. I'm saying that even if the one portion of an October 16, 2012, conversation is considered direct evidence, it doesn't establish pretext because it has to have been, more likely than not, the reason for the discriminatory act. And that's as stated in Lucent v. Technologies. But what he's going to say in rebuttal, presumably, is that when we look at the full context of the conversation, certainly a jury could find that that was grounds for reasoning. He was mad that Mr. Sherwood was mad. Why did you do this to me? I told you not to do it. I'm shipping you to Tucson. If we believe his version of the story, and I understand that you don't believe that version, but assuming a jury would, why isn't that sufficient for this case to go forward? It's not sufficient based on this court's decision in Villaremo v. Aloha Island, which stated that when the only evidence the plaintiff has presented is a self-serving affidavit that's uncorroborated, that is not sufficient to generate a genuine issue of material fact. But how would, in this situation, it's a conversation between an employee and an employer, or his boss, I guess, federal government's employer, but you know what I mean. How else would he corroborate that other than saying this is what happened? Well, in contrast to Mr. Morgan, Mr. Sherwood has corroborated his statements. He affirmatively testified in his EEO affidavit that he never once dissuaded Mr. Morgan from pursuing the EEO claim. He attested that he didn't learn about the intent to file an EEO claim until much later. This is corroborated in the record by the e-mails that show the date Mr. Sherwood was informed that the plaintiff was considering filing an EEO complaint. That was on September 24, 2012. The very same day, Mr. Sherwood, the e-mails show he's reaching out to Human Resources. He is asking for guidance in terms of providing the information to Mr. Morgan and gets the number for Mr. Morgan to call, gets the accountability board website for an unfair labor practice complaint to be filed, and instructs Mary Hart to forward that information to Mr. Morgan. We even have Mr. Sherwood himself on August 30, 2012, requesting accountability board and EEO intervention to investigate. They respond and say this isn't an accountability board or EEO case. Try conflict resolution, and that's precisely what the agency did. That is evidence that corroborates his statement. It corroborates when he actually learned Mr. Sherwood was considering filing an EEO complaint, and it corroborates that he wasn't dissuading anybody from doing anything. He was facilitating the information. I get your point. I take it he's going to, because, again, you don't have civil rebuttal. So he's going to get up and say, well, but this is a he said, he said case, and that's Mr. Sherwood's version of events, but I should be able to tell the jury my version of events in this conversation. And so what in the law says that he can't do that at this stage? The law under Villarimo says he needed to provide something more than only a self-serving, uncorroborated affidavit. Anybody could say anything in an affidavit and create a genuine issue of material fact at that point. I would also add that even under Clark County v. Breeden, the September 24, 2012 email conceivably isn't an act of protective activity as well because all that consisted of was an employee calling Mr. Morgan a racist. Given what the EEOC does in routing out and identifying people who, employers that are racially discriminatory, is the act of calling somebody a racist a violation of Title VII? Under Clark County, very conceivably no. And if that's the case, then we're left only with October 9, 2012 as the act of protected activity, and in the record it's undisputed that Mr. Sherwood finalized the NASTEP decision prior to that on October 2, 2012. When we look at the universe of undisputed facts, protected activity did not occur on August 2, 2012. The decision to reassign Mr. Morgan occurred no later than August 30, 2012. It predated any sort of protected activity under Clark County. That can be evidence of no causation whatsoever. And I also refer to the Ninth Circuit case, Titano v. Mabus. When an employee requests a reassignment, and in this case it's undisputed that prior to the October 9th entering of the EEOC process, Mr. Morgan requested separation from Mr. Younger in the conversation with Ms. Jones and subsequently with Ms. Hart. It cannot be said that the reassignment caused any injury. Ultimately, at the end of the day, it was the delivery of the decision, not the actual nature of the reassignment to which Mr. Morgan objects. So at the end of the day, we're left with an uncorroborated self-serving affidavit as the only evidence of anything that could be construed as pretext. It's not sufficient under this Court's precedent, and plaintiff cannot show but for causation of any kind of adverse action. If the panel has any additional questions. Thank you. We ask that you affirm. Thank you, counsel. Mr. Smith. Very briefly, asking for separation is not asking for reassignment. Not the same thing. Two different words in the English language there. The September 24th email that Morgan sent to Hart that was then forwarded to Sherwood that said, I am requesting to file an EEO complaint against Will Younger because I believe he is discriminating against me. That is a protected disclosure, and Sherwood was aware of that prior to October 9th when the EEO counselor communicated with him. And just briefly, in an overall sense, I believe that the agency is complicating a very straightforward process on how these cases are proven. We have a process to prove causality. It's knowledge timing or it's circumstantial or direct evidence, and direct evidence has been provided, knowledge and timing test has been met, and pretext has been shown. So for those reasons, we request that the decision be reversed or remanded. Thank you. Thank you, counsel. Thank you both for your argument in this case. This matter is submitted, and this panel is adjourned. Thank you.
judges: Fernandez, Tashima, Owens